# Court of Appeals.

April 7, 1896.

## PEOPLE v. WILLIAM H. SCHOOLEY.

1. CRIMINAL LAW—RECEIVING STOLEN PROPERTY.

On trial of an indictment for receiving stolen property, consisting of railroad bonds, the circumstances as to defendant's manner of receiving them, his manner of dealing with them, his knowledge of the person from whom he claimed to have received them, his own acts in transferring them, the many peculiarities attending such transfers, and his method of payments to the claimed owner as proved and admitted by him, when added to the fact that these bonds had been stolen and were in his possession, were held to be sufficient evidence of the fact that, when he sold them, he knew that they were stolen, to justify the submission of the question to the jury.

2. SAME—EVIDENCE.

Upon such trial, evidence to show by experts that the bonds had been changed, the indorsements thereon removed, the numbers upon the bonds and coupons obliterated and others substituted, what names and numbers were originally upon them, and that the signatures upon powers of attorney which defendant claimed were given to him, were in his own handwriting, is admissible.

3. APPEAL—ERROR CURED.

The error in admitting improper evidence is cured when the evidence is stricken out on the exceptant's motion, and the jury are directed to disregard it.

4. CRIMINAL LAW—EVIDENCE—HEARSAY.

Testimony as to statements made to witness by a third person, which in no way related to or formed a part of any transaction which took place with the defendant, is clearly inadmissible on part of defendant.

Appeal from a judgment convicting defendant of receiving stolen property.

Robert J. Haire, for appellant.

John D. Lindsay, for the People.

MARTIN, J.—The defendant was indicted for grand larceny in the first degree, and also for receiving stolen goods. The prop-

erty alleged to have been stolen and feloniously received by the defendant consisted of four bonds of the St. Louis & Iron Mountain Railroad Company, of the par value of $1,000 each. They belonged to Ellen M. Gray, of Washington, D. C. The charge in the indictment, so far as it was for larceny, was withdrawn at the opening of the case, and the action was tried upon the sole charge that the defendant was guilty of receiving the bonds in question, knowing them to have been stolen. That they were stolen December 14, 1890, at the city of Washington, was proved, and not denied. It was also shown by the undisputed evidence that in the following August they were in the possession of the defendant. When in his possession, the indorsements thereon had been removed, the numbers of the bonds and coupons attached thereto, had been obliterated, and other numbers substituted in their places. One of the bonds shown to have been in the defendant's possession was presented by him to James Walsh & Son for sale August 10, 1891. As they testified, it was sold for $1,035, while the defendant testified that the price was only the sum of $900. It is manifest that the circumstances shown to have attended that transfer were not in all respects usual, or such as to indicate an open, honest and fair business transaction. The defendant subsequently, and within a few days, transferred the other three bonds to White, Morris & Co., who sold them for him, and he received the price for which they were sold. It is not seriously contended that the actual transaction between the firm of White, Morris & Co. and the defendant was, in and of itself, unusual or irregular. The people, however, claim that attending all these transactions there were circumstances and conduct upon the part of the defendant which were inconsistent with an innocent and honest holding or transfer of the bonds, which tended to show that he possessed knowledge that the bonds had been stolen, and disposed of them with knowledge of that fact. As the larceny of the bonds, and the defendant's possession of them, were proved, and not denied, the only question that was finally disputed or contested was whether the defendant, when he sold the bonds, knew that they had been stolen, and whether there was sufficient evidence of that fact to justify the submission of the question to the jury. While there was no

direct evidence that the defendant received these bonds from any particular person who had stolen them, or that he had positive information, when he sold them, that they had been stolen, still the circumstances as to his manner of receiving them, his manner of dealing with them, his knowledge and discription of the person from whom he claimed to have received them, his own acts in transferring them, the many peculiarities attending such transfers, and his method of payments to the claimed owner as proved and admitted by him, when added to the facts that these bonds had been stolen, and were in his possession, were quite potential evidence that he possessed the guilty knowledge alleged. Upon all the evidence the question whether or not he knew that these bonds had been stolen was clearly one of fact for the jury. Upon this evidence the jury found against the defendant, and that finding has been affirmed by the general term. It cannot be said that the evidence was insufficient to sustain it, and hence it will not be disturbed by this court.

Upon the trial the people called experts to examine the bonds in question, by whom it was proved that they had been changed, the endorsements thereon removed, the numbers upon the bonds and coupons obliterated and others substituted; and one witness was permitted, by chemical experiments in the presence of the jury, to show the numbers and names that were upon the bonds originally. The people were also permitted to prove, by the opinion of experts, that the signatures upon the powers of attorney claimed by the defendant to have been given to him were in the same handwriting as that of a paper which was proved to have been written by him. The court properly admitted proof tending to show that the bonds had been changed, and to show the numbers and names that were originally upon them. It was evidence bearing upon the question of the identity of the stolen bonds, and was clearly admissible for that purpose. The appellant contends that it was error to permit the district attorney to introduce evidence that the signatures upon the powers of attorney, which purported to have been made by the alleged owner of the bonds, were in the defendant's handwriting. This claim seems to be based upon the theory that the district attorney had information to the effect that the powers of attorney were in fact signed by some person other than the defendant and

hence that the evidence admitted was "secondary in its character and tended to confuse the minds of the jury." We know of no principle or rule of law that would have justified the court in rejecting this evidence. It was clearly competent for the people to show that the powers of attorney were not what they purported to be, but were signed by the defendant, even though he afterwards proved by certain notaries public that some other person, unknown to them, in fact signed such powers of attorney. Indeed, upon the whole evidence relating to that subject including the circumstances under which the acknowledgments were taken, the court might well have submitted the question to the jury whether the powers of attorney were signed by the defendant, or by some other person who claimed to be the owner of the bonds.

The appellant also claims that evidence of the witness James F. Vallely, which tended to show the absence of the defendant, and that he was trying to avoid trial upon the indictment, was improperly admitted. Subsequently the defendant's attorney moved to strike out the evidence of that witness. The court struck it out, and told the jury to disregard it. In this clearly there was no error. If it was improper the error was cured when the evidence was stricken out on the defendant's motion, and the jury were directed to disregard it. Gall v. Gall, 114 N. Y. 109; 21 N. E. 106; Holmes v. Moffatt, 120 N. Y. 159; 24 N. E. 275.

The appellant also contends that the court erred in permitting the witness Charles McGroarty to testify as to the movements of the defendant upon a certain day, and that it was error to refuse to strike out his evidence upon that subject. He was called as a witness for the people, and testified that when the defendant was at the office of James Walsh & Son upon one occasion, after he left he followed him, and that he did not go to the office of Drexel, Morgan & Co. It had already been proved by one of the firm of James Walsh & Son that the defendant, two or three days after he sold them the first bond, came to them, and said he had three more that he wanted to sell them, but wanted the money immediately; that they refused to buy them unless he brought his client there, which he said was unnecessary; that, if they did not want the bonds, he could sell them elsewhere, and that he could sell them to Drexel, Morgan & Co., and left their office;

that they gave McGroarty, who was in their employ, some direction, and that it was in pursuance of that that he followed the defendant. That the defendant did not go to the office of Drexel, Morgan & Co. was a circumstance which it was proper to prove as bearing upon the question of his good faith, and the court was justified in refusing to strike out the evidence upon that subject.

Nor do we find any error in the refusal of the court to dismiss the indictment, and direct a verdict of not guilty. The question of the guilt or innocence of the defendant was for the jury, and the court had no authority to give the direction asked. Code Cr. Proc. § 410; People v. Adams, 16 Hun, 550.

The defendant asked the witness Coen whether, at the time of taking one of the acknowledgments, he thought or supposed he knew the man whose acknowledgment was taken. This was objected to, the objection was sustained, and an exception taken. He was permitted, however, to ask the witness the question whether he believed he knew that man, to which the witness answered, "I really did. I really believed he was an acquaintance in the neighborhood." He was finally asked, "And you didn't know him, and you certified to what was not the fact?" to which he replied, "I certified to what was not the fact." We discover in this ruling no error. We think the trial court gave the defendant all the latitude to which he was entitled.

Nor was it error to exclude the evidence of the witness Sumner as to what James H. Edgar, who was known also as Abijah Richardson, Miller, James H. Henry, and Joel Peterson, said to him as to how he desired to have the bonds sold. It was not shown to have any connection with the sale of the bonds by the defendant, and at most tended to show that these bonds were at some time in the possession of a person sometimes known as Joel Peterson, to the knowledge of the witness, and that Peterson expressed some desire as to the manner in which they should be sold. It is not apparent how the evidence could have been admissible. It was at most mere hearsay.

The appellant claims that the court erred in excluding the evidence of the witness Purdy as to conversations which occurred between the witness and Peterson, who was known to him as

Abijah Richardson. We do not see how the conversation between the witness and Peterson could be material. It would at most amount to an unverified declaration made to the witness, and was clearly inadmissible. This evidence in no way related to or formed a part of any transaction which took place with the defendant, and was properly rejected. The appellant calls attention to the charge of the trial judge as to the relations existing between the defendant and Peterson, and claims that it was error to charge that the question was for the jury to consider whether Peterson ever existed, and also in commenting upon the testimony of the notaries public. We have examined the portions of the charge to which our attention has been called, but find no errors in the respects suggested. Moreover, no exception to these portions of the charge was taken.

We have carefully read the brief of the learned counsel for the defendant, examined his authorities upon the admissibility of expert evidence, but have found no principle upon which it can be properly held that the rulings of the trial judge upon that subject were erroneous. Having thus carefully examined all the exceptions and rulings to which our attention has been called by the learned counsel for the appellant, either in his oral argument or by his brief, we are lead to the conclusion that the judgment should be affirmed.

All concur.

Judgment affirmed.