create such lien, and that, the judgment debtor having been discharged before the filing of the lis pendens, the judgment became extinguished, and that no lien based thereon could be created subsequently to such extinguishment. It will be noticed that in the case relied upon the judgment creditor's action was not begun until long after the judgment debtor's discharge in bankruptcy. The lien is created by the commencement of the action. The office of a lis pendens is to give notice to subsequent purchasers or incumbrancers. Prior to the statute the lis pendens was created by the filing of the bill, and all persons who became purchasers or incumbrancers pendente lite were bound by the judgment. The effect of the statute was to make the pendency of the action, so far as it affected real estate, notice only from the time of the filing of the lis pendens as provided. Had a trustee in bankruptcy been appointed, a different question might have arisen. Undoubtedly in such case the right to maintain the action would have vested in the trustee,. and it is also probable that the lien acquired by the plaintiffs by the commencement of the action would not have given them. priority over other creditors, for the reason that the action was not begun more than four months before the filing of the petition in bankruptcy; but, no trustee having been appointed, the plaintiffs can proceed to the enforcement of their lien obtained before the discharge, because, so far as the discharge itself is concerned, its effect is personal to the judgment debtor. Dewey v. Moyer, supra;. Moyer v. Dewey, 103 U. S. 301, 26 L. Ed. 394. No accounting being necessary, a money judgment was proper. Baily v. Hornthal,. 154 N. Y. 648, 49 N. E. 56, 61 Am. St. Rep. 645.

There are no other questions presented by the record requiring further consideration, and the judgment should be affirmed, with. costs. All concur.

---

### HARKINS v. QUEEN INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

1. MASTER AND SERVANT—PERSONAL INJURIES—EVIDENCE—DEFECTIVE MACHINERY.

In an action by a servant against the master for personal injuries caused by the falling of an elevator, evidence of admissions by defendant's engineer that a portion of the machinery operating the elevator was defective was inadmissible.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 912.]

2. SAME—CURING OF ERROR.

Where, in an action by a servant against the master for personal injuries from the falling of an elevator, evidence of an admission by defendant's engineer that a part of the machinery was defective was erroneously admitted and afterwards stricken out on motion, though the direction to disregard the testimony was coupled with an expression of opinion by the court that the evidence was admissible, the error was. not sufficient to justify a reversal.

3. SAME.

In an action by a servant for personal injuries alleged to have been caused by the falling of an elevator, it was alleged that the elevator had fallen on a number of different occasions, and plaintiff was allowed to·

testify again and again to statements made by the superintendent and manager of the building, after the time when the elevator first fell, tending to show that it was out of order at the time these statements were made. After the evidence was in, and just before delivery of his charge, the court dismissed the complaint as to all occurrences subsequent to the first fall of the elevator, and directed the jury to disregard the evidence as to the admissions of the superintendent and manager. *Held*, that this direction was insufficient to destroy the effect of the evidence attempted to be excluded.

Appeal from Trial Term, Kings County.

Action by Edward D. Harkins against the Queen Insurance Company of America. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Edwin A. Jones (Joseph Larocque, Jr., on the brief), for appellant.

Frederick F. Neuman (David Welch, on the brief), for respondent.

WILLARD BARTLETT, J.   The plaintiff was employed by the defendant to operate an elevator. On the day when he began work in the defendant's elevator at the Queen building in the borough of Manhattan the car fell a distance of several stories to the ground floor, inflicting the injuries for which a recovery is sought in this action. After narrating the circumstances of the accident, the plaintiff, over objection and exception in behalf of the defendant, was permitted to testify to a conversation with one Patrick Fitzgerald, an engineer in the service of the defendant, who had charge of the engines by which the elevator was operated. The interview took place shortly after the fall of the elevator, when the plaintiff began to experience pain and dizziness and numbness in consequence of the accident. His statement of the interview was as follows:

"I entered the engine room, and I says: 'Paddy, I understand that the elevator is all right. Is that so?' He said: 'Yes, I patched it up for to-day, but I will see Jim McKay, and I will have him get a new pilot motor. That is the only way out of it. It has to be done first or last, and we might as well do it.'"

After this testimony had been given, the defendant moved to strike it out as incompetent, irrelevant, and immaterial, and as not binding on the defendant, no authority having been shown on the part of Fitzgerald to make any such statement. The motion was denied, and the defendant duly excepted. It is perfectly clear that this evidence was inadmissible. The only purpose in offering it must have been to prove an admission by the defendant's engineer, binding upon the defendant, to the effect that the fall of the elevator car occurred, as the plaintiff contended that it occurred, by reason of a defect in the pilot motor. The defendant corporation was not legally chargeable with any liability on account of such admission by its engineer, and I think there can be no doubt that, if there was nothing further in the record on this subject, the judgment and order would have to be reversed on account of the error

of the trial court in receiving this testimony, which was certainly most damaging to the defendant in character and effect.

It is argued in behalf of the respondent, however, that the error was cured by the subsequent action of the learned judge who presided upon the trial in striking out the evidence which has been quoted and instructing the jury to disregard it; and in support of this proposition we are referred to the opinion of Earl, J., in Chesebrough v. Conover, 140 N. Y. 382, 389, 35 N. E. 633, in which the case under consideration was likened to a case where upon the trial of an action the trial judge erroneously received objectionable and damaging evidence which he subsequently strikes out and directs the jury to disregard. "In such cases," said Judge Earl, "we have uniformly held that the vice is eliminated, and. that theoretically, at least, the erroneous evidence found no lodgment in the minds of the jury." The rule thus invoked would probably compel us to regard this error as having been cured, if it stood alone in the record, although the learned trial judge accompanied his direction to the jury with a qualifying statement, which must have given the jurors to understand that, in his opinion,. the evidence was competent and proper for their consideration, notwithstanding his formal instruction that. they should disregard it. I quote that portion of the record which relates to this matter:

"Mr. Jones: I move to strike out all of the testimony admitted showing any conversation with Fitzgerald with reference to anything that occurred in the building. The Court: It is the same motion which you made yesterday, and which I denied at that time. Mr. Jones: Yes, sir. The Court: In reference to conversation between Fitzgerald and the plaintiff? Mr. Welch: Yes; I will consent to that. I not only consent to that, but I especially ask your honor to charge the jury, or make the statement now, that they shall entirely disregard it. The Court: I think I had better strike that out, while I am inclined to think that it is competent. Gentlemen of the jury, the testimony given by the plaintiff as to all conversations testified to by the plaintiff between him and Fitzgerald I instruct you to disregard. Mr. Jones: Just as though they never had heard it? The Court: Just the same as if you had never heard it."

The statement of the judge that he was inclined to think the testimony of the plaintiff as to his conversation with the engineer was competent, although he thought he had better strike it out, operated largely to nullify his formal act in granting the motion and instructing the jury to disregard such testimony. It was very much as though he had said to the jury: "It is really my opinion as a lawyer that this evidence is properly received, and ought to be considered in passing upon the question of the defendant's liability; but, notwithstanding that opinion, in order to avoid what may be deemed a fatal error by an appellate court, I tell you to pay no attention to this part of the proof in arriving at your verdict." It seems to me that a statement of this nature deprives the formal action of the trial judge of the effective character which might otherwise be assigned to it under the authority of Chesebrough v. Conover, supra, and similar cases. It is idle to tell juries, as the jury was substantially told in this case, that they are to take the law from the court, and then assume that they will not be influenced in the determination of the issues by a distinct intimation from the pre-

siding judge that, notwithstanding a formal ruling by him exclud-
ing certain evidence, it is his opinion as a lawyer that such evidence
was and is competent.   To strike out evidence, and say in the same
breath that it was properly received, is, in my opinion, equivalent
to leaving it in the case for the consideration of the jury.   A ma-
jcrity of the members of the court, however, deem the error which
I have discussed insufficient of itself to justify a reversal, and my
own convictions on the subject are not so clear and unhesitating as
to induce me to dissent from their conclusion in that respect.
Nevertheless, we are agreed that the judgment must be reversed
on account of the great number of erroneous rulings of a similar
character, to which exceptions were duly taken in behalf of the ap-
pellant, admitting a large quantity of evidence which we think·
must have affected the jury and influenced their verdict, notwith-
standing the subsequent efforts of the trial judge to correct his mis-
takes by striking out such evidence and instructing the jury to dis-
regard it.

The complaint alleged that the plaintiff was injured by reason of
the fall of the elevator in the defendant's building on or about the
29th day of August, 1901, and thereafter on divers dates on and be-
tween the 30th day of August and the 11th day of September in the
same year.   A great deal of testimony was introduced in his behalf,
over objection and exception, as to accidents in the elevator and
its failure to operate properly on occasions after the first day of the
plaintiff's employment.   After all the evidence was in on both sides,
the trial judge dismissed the complaint as to all occurrences sub-
sequent to the first fall of the elevator.   Referring to this partial
dismissal of the complaint, he said to the jury in his charge:

"The accident in question is claimed to have occurred on the 26th of Au-
gust in the year 1901.   Evidence has been given that several times after that
day and up to and including the 10th of September the elevator fell or de-
scended more rapidly than it should have done; but, according to the plain-
tiff's testimony, the injury which he claims he sustained was sustained by him
at the time of the first descent of the elevator in question on the 28th of
August. * * * He says that upon that day he felt a 'snapping'—I think
that was the word he used—and at another time he used the expression he
felt a parting in his back.   That he locates in point of time as the first day
that he was in the employ of the defendant, on the 28th of August, and hence
I have granted the defendant's motion to dismiss the complaint so far as it
relates to any occurrence subsequent to that time, because no injuries can
be predicated upon any occurrence which took place after that time, and
therefore I instruct you now that you should disregard, the same as if it had
not been given, all testimony of any conversations which were had with either
James or Thomas McKay subsequent to the fall of the elevator or the descent
of the elevator on the 28th day of August."

The McKays thus referred to were two persons, one of whom
was described as the superintendent of the defendant's building and
the other as the manager.   The plaintiff had been permitted to
testify again and again to statements made by these persons bear-
ing upon the condition of the elevator, tending to show that it was
out of order at various periods subsequent to the only fall which
the court held could be the basis of any recovery in the action ; and
so much of the trial consisted of the reception of evidence of this

sort that it is impossible to read through the appeal book without being led to the conclusion that the jury must have based their verdict upon a mass of testimony which had really nothing to do with the vital question of the defendant's responsibility for the condition of the elevator at the time it first fell with the plaintiff, and which was equal in quantity to the proof in the case which was really relevant to the issue. In our opinion, to formally strike out this testimony after allowing it to stand as evidence in the cause to be considered by the jury up to the very time when the learned trial judge began to deliver his charge, was plainly inefficient to do away with the damage inflicted by its reception, and for this reason we think the defendant is entitled to prevail upon its appeal from the order denying the motion for a new trial. That motion was specifically upon the ground, among others, "that improper testimony was admitted over defendant's objection and exception, which said testimony was subsequently ordered to be stricken from the record, but which said order did not cure the error." In Ives v. Ellis, 169 N. Y. 85, 91, 62 N. E. 138, Chief Judge Parker, considering an attempt to cure the effect of an erroneous ruling admitting improper evidence, said that, before an appellate court would hold that such an error has been cured, "it must feel sure that the effort of the trial court to correct the error was necessarily effective with the minds of the jury." In the case at bar the erroneous rulings are so numerous and pervasive of the whole case as to satisfy us that the effort to correct them was necessarily abortive.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except HOOKER, J., not voting.